# THE CHICAGO AND NORTHWESTERN RAILROAD COMPANY

## v.

# JOHN W. TAYLOR.

1. RAILROADS—FENCING TRACK—LIABILITY FOR KILLING STOCK.—Appellee owned a horse, worked for one Stitzell on his farm. Stitzell had left a gap down in the railroad fence between his farm and the track. The horse escaped from the stable in the night, went through the gap in the fence, and being frightened by an approaching train, run into a railroad bridge from which he was carefully removed by the railroad employes. The train did not come in contact with the horse; he died from injuries caused by the fall or his removal from the bridge, *held*, that under the statute making railroad companies liable for injuries to stock when they do not fence their tracks or keep them in repair a recovery can be had only when the engines or cars come in contact with the stock, and not when they are frightened by the cars and run into a bridge or culvert and are injured.

2. NEGLIGENCE—CARE REQUIRED.—That in the absence of proof of negligence on the part of the owner of the stock, it follows that the appellant, after its agent discovered the horse on the track was only bound to use ordinary care and prudence in so running their train as not to cause injury to the horse, and the burden of proof of such want of care or proof of negligence was on the appellee. The engineer was not required to stop his train and send a man out to prevent the horse from injuring himself.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed April 6, 1881.

Messrs. W. & W. D. BARGE, for appellant; that under the law it is necessary that the engines and cars should have come in actual contact with the horse, cited Hurd's Revised Statutes 1880, page 822; Lafferty v. Hannibal & St. Joseph R. R. Co. 44 Mo. 291; O. & M. R. R. Co. v. Cole, 41 Ind. 331; P. & I. R. R. Co. v. Hasket, 10 Ind. 409; B. P. & C. R. R. Co. v. Thomas, 60 Ind. 108; J. M. & I. R. R. Co. et al. v. Downey, 61 Ind. 287; 1 Redfield on Railways, 493; Wharton on Negligence, 757, Sec. 828; Hilliard on Torts, 385.

The owner of a horse loaned to another is responsible for the negligence of the borrower; and if the negligence of the

C. & N. W. R. R. Co. v. Taylor.

latter contributed to an accident whereby the horse was killed, the owner cannot recover: 2 Thompson on Negligence, 1242, Sec. 17; Forks Township v. King, 84 Pa. St. 230; Cooley on Torts, 144, 145.

The servants of appellant in charge of the train were only required to use reasonable care and diligence to prevent the horse from going on the bridge and to remove him from it: P. P. & J. R. R. Co. v. Champ, 75 Ill. 577; T. P. & W. R. R. Co. v. Bray, 57 Ill. 514.

An instruction should assume nothing: Olsen v. Upshal, 69 Ill. 273; Durham v. Goodwin, 54 Ill. 469; C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

As to the sufficiency of the care and caution used in removing the horse from the bridge: Needham v. San Francisco and San Jose R. R. Co. 37 Cal. 409; Ill. C. R. R. Co. v. Reedy, 17 Ill. 580.

It is error to give an instruction founded upon a state of facts when there is no evidence tending to prove them: Andreas v. Ketcham, 77 Ill. 377; American v. Rimpert, 75 Ill. 228; I. C. R. R. Co. v. Cragin, 71 Ill. 177; I. C. R. R. Co. v. Benton, 69 Ill. 174; Holden v. Hulburd, 61 Ill. 280; Paulin v. Howser, 63 Ill. 312; Ind. & St. L. Co. v. Miller, 71 Ill. 463.

Messrs. DINSMOOR, STAGER & DINSMOOR, for appellee; that appellee was not responsible for the negligence of Stitzell in leaving the fence down, cited McCoy v. California Pa. R. R. Co. 40 Cal. 532; Wilder v. Maine R. R. Co. 65 Me. 332; Brown v. Providence H. & F. R. R. Co. 12 Gray, 55; Corwin v. New York & E. R. R. Co. 3 Kernan, 42; Sarrod v. N. W. R. R. Co. 4 Exch. 587.

That the case of Ill. C. R. R. R. Co. v. Reedy, 17 Ill. 580, has been overruled in Ill. C. R. R. R. Co. v. Middlesworth, 43 Ill. 64.

That the horse of appellee was not running at large and the instruction to that effect was not supported by the evidence: Town of Collinsville v. Scanland, 58 Ill. 221; Kinder v. Gillespie, 63 Ill. 88.

LACEY, P. J. Appellee was the owner of a horse and had loaned him to one John Stitzell, a neighbor for whom he was at work, on the latter's farm. John Stitzell's farm was just west of Nelson Station in Whiteside county, joining on the west of it; his house and all his farm buildings were north of the railroad track, which ran east and west; he had no land on the south side of the railroad. The horse was put into the stable on the night of the 23rd Oct. 1879, and during that night broke out and through a gap in the railroad fence south of Stitzell's house and a little east of his barn, where a gap had been left open by Stitzell, or his hands, several weeks before that time, so that horses could be lead through; had gone on to the railroad track twenty or thirty rods west of Nelson station and about one mile east of Rock river bridge.

About 12 o'clock at night, as the freight train consisting of twenty-eight to thirty cars came along on appellant's road just at this point, the horse ran upon the embankment from the south side of the track just in front of the cars and ran rapidly in the dark along on the railroad track till he was out of sight.

The engineer saw the horse come onto the track, when he whistled down brakes and slacked up the train which was running when the horse first came on to the track at the rate of about eight or nine miles per hour.

Brakes were set and the train put under control, and the speed slackened, and the engineer and fireman kept watching for the horse and when they had gotten about half way to the bridge they saw the horse come running back on the track, headed for the engine but when he came within twenty or thirty feet of the engine he wheeled and ran back again on the track towards the bridge and out of sight. The engineer then slowed up the train to a speed of three or four miles an hour, so he could have gotten off and walked as fast as the train ran.

The engineer and fireman could only see two hundred or two hundred and fifty feet ahead of the head light.

While running along cautiously in this way, supposing the horse had got off the track, when they came within about two hundred feet of the bridge they saw the horse at the east end in the act of running on to it.

They then immediately stopped the train within about one hundred and fifty feet of the bridge, but the horse being frightened, jumped on and ran thirty to forty feet when all his legs fell through between the ties and he was imprisoned. The bridge was made of cross ties about eight feet long and six inches wide laid eight inches apart, and was some fifteen feet high. The railroad hands, about eight in number, then got the horse's legs from between the ties, tied them all together with halter straps and hemp cord, and hitching the engine to the ropes, pulled the horse cautiously and slowly back off the railroad bridge on to the solid bank where the horse was unloosed, got up and ran down the railroad bank off the track and disappeared. By this fall through the bridge, and maybe the getting the horse off the track, he received such injuries that he afterwards died, and appellee recovered judgment against appellant for forty dollars and costs of suit in the court below.

In taking the horse off the bridge it is conceded by counsel for appellee that the railroad hands acted prudently and cautiously and used as much care as they could under the circumstances.

It will be seen by this statement that the horse received no injuries from direct contact with the engine or cars.

It is claimed on the part of the appellant:

1st. That appellee is chargeable with the negligence of Stitzell, who had the horse in his care and under his control, in taking down the railroad fence and permitting it to remain down, whereby the horse got through on the track and was injured.

2nd. That as appellee received no direct injury by reason of the cars or engine running against the horse, this fact, if it be admittted, that the appellant did not keep the railroad fence in repair as it is required to do by the statute, would not make the appellant liable under the statute.

3rd. That the appellant is only liable for the injury sustained by the horse resulting from want of ordinary care or gross negligence as at common law.

4th. That under the facts as developed in the evidence, that

appellant is not chargeable with want of ordinary care in running its train.

According to the view we take of the case, it is not necessary to decide whether or not appellee is chargeable with the negligence of Stitzell in causing the railroad fence to be taken down and in not putting it up again: that is, whether appellee is chargeable with the wrongful act of Stitzell in taking down the fence long before he took the horse into his care, or whether he is chargeable with the wrongful omissions in allowing it to remain down afterwards.

We shall, then, proceed to the consideration of the question as to whether or not recovery can be had in a case like this under the statute requiring railroad companies to fence their tracks and keep the fence in repair. The language of the statute, after requiring the track to be fenced, is as follows: " And when such fences   *   *   *   are not made as aforesaid, or when such fences   *   *   *   are not kept in good repair such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation to such cattle, horses, sheep, hogs, or other stock thereon, etc., etc.; but when such fences and guards have been duly made and kept in good repair, such railroad corporation shall not be liable for any such damages unless negligently and willfully done." Sessions Laws 1879, p. 224.

The question is presented whether any damages resulting from any injury other than one caused by actual contact with the engines or cars of the corporation can be recovered for under this statute. This statute appears never to have received a construction by the Supreme Court in reference to this question.

This court is called upon to give a construction of the statute for the first time.

The statute in our opinion imports that the injury must be done directly by the agents, engines or cars. In this case neither engine or cars did the injury: the injury was occasioned by the horse falling through the bridge and that was caused by the fright that he took at the engine and cars while in motion. The statute does not provide that the corporation

C. & N. W. R. R. Co. v. Taylor.

shall be liable for injuries received by stock getting into culverts and on bridges in case the road is not fenced and kept in repair as required by statute, it only provides for the injuries done by the engines, or cars, or agents in connection therewith.   The statute does not provide for injuries done by the agents, engines or cars *indirectly*.   It only provides for those *done*.   It seems to us that a fair interpretation of the statute requires us to hold that the injury must be done by direct contact, by the agents, engines, or cars before a recovery can be had under the statute.   The Supreme Courts of both Missouri and Indiana have given to similar statutes in those States this construction, and the reasoning of those courts commends itself to our judgment. Lafferty v. H. & St. J. R. R. Co. 44 Mo. 291; Ohio & Miss. R. R. Co. v. Cole, 41 Ind. 331; the P. I. R. R. Co. v. Hasket, 10 Ind. 409; B. P. & C. R. W. Co. v. Thomas, 60 Ind. 108; J. M. & I. R. R. Co. et al. v. Dawry, 61 Ind. 287; 1 Redfield on Railways, 493, lasted; Wharton on Negligence, p. 757, § 828; Hilliard on Torts, 385.

Assuming that no recovery can be had under the statute where negligence is presumed from the fact of the railroad not being fenced, in the absence of, proofs of negligence on the part of the owner of the stock, it follows that appellant after its agent discovered the horse on the track, was only bound to use ordinary care and prudence in so running their train as not to cause injury to the horse, and the burthen of proof of such want of care or proof of negligence was on the appellee. We think there was not sufficient evidence to show common law liability or to show negligence.   The agent of appellant used such care and caution as to avoid a collision.   They did everything to avoid injury that prudent, cautious men would in the exercise of ordinary care be required to do.   They slacked the speed of the train and run it for one quarter to one half mile so slow that a person could walk and keep up with it.   They knew the horse had been on the track, but there is no evidence to show that the horse could not leave the track easily.   The engineer thought he had left the track.

They would not reasonably anticipate that the horse would jump into the bridge instead of leaving the track.

There was a possibility that the horse might do this, but not a probability. The T. P. & W. R. R. Co. v. Bray was, no doubt, a case where the cows were on the railroad track and the engineer could have seen them by ordinary care and could have prevented running on to them. It has no similarity to this case. Here the engine did not run on to the horse, the only thing was to guard against frightening the horse so that he would not do injury to himself. Did ordinary care require that when the engineer saw the horse come on the track, that he should stop the train and send men out a mile to head off the horse to prevent him running on the bridge, or even a quarter of a mile. We think not, as was said in the case of the P. P. & J. R. R. Co. v. Camp, 75 Ill. 577, by the Supreme Court: "The engine driver may have seen the horse grazing near the railroad not many rods distant, but it was not his duty to stop his train by reason of that fact; he could not anticipate the horse would come suddenly on the track. Under such circumstances it would be an unreasonable regulation to require him to stop his train, and the law has imposed no such obligation." In this case we think it would be an unreasonable regulation to require the engineer to stop his train and send out men in order to head off the horse and prevent him injuring himself on the bridge; under the circumstances it could not be reasonably anticipated that he would do so any more than it would be that a horse standing by the side of the track would suddenly come upon it when an engine and cars were passing at full speed.

Under the view we take of this case it is not necessary to notice the objections to appellee's instructions, as we think the verdict is contrary to the law and the evidence, and the judgment must be reversed and the cause remanded.

Reversed and remanded.